UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF INDUSTRIAL BANKERS, ONLINE LENDERS ALLIANCE, and AMERICAN FINANCIAL SERVICES ASSOCIATION,<br><br>               Plaintiffs,<br><br>v.<br><br>SEAN O'DAY, in his official capacity as Director of Oregon Department of Consumer and Business Services,<br><br>               Defendant. | Case No.  6:26-cv-01201-AA |

**DECLARATION OF MIKE WATSON IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

I, Mike Watson, declare and state as follows:

1.     I am the Chief Executive Officer for Capital Community Bank, Inc. d/b/a CCBank ("CCBank"). I have held this position since 2015. CCBank is a state-chartered Utah bank whose deposits are insured by the Federal Deposit Insurance Corporation ("FDIC") to the fullest extent under the Federal Deposit Insurance Act of 1950. CCBank is headquartered at 3280 N University Ave, Provo, UT 84604. I make this declaration in support of Plaintiffs' Motion for a Preliminary Injunction. This declaration is based on my personal knowledge, experience working in the banking industry, and a review of records kept in the ordinary course of business by CCBank, and I could and would competently testify to its contents if called to do so.

2.     CCBank is a member of the Online Lenders Alliance ("OLA") and American Financial Services Association ("AFSA").

3.      CCBank offers consumer finance loans to consumers across the United States at a range of interest rates depending on, among other factors, the risk profile of a particular borrower. Prior to the effective date of Oregon HB 4116, CCBank offered these loans to residents of Oregon. The interest rates on these loans are lawful under Utah law. Under federal law, CCBank can offer loans to residents of other states utilizing the interest rates permissible under Utah law.

4.      When CCBank offered loans to Oregon residents it did not, within the borders of the State of Oregon, (a) approve loans (that is, CCBank did not apply in Oregon subjective underwriting criteria, make decisions regarding loan applications, develop automated electronic underwriting systems and criteria, or create credit policies), (b) make the choice to extend credit to any consumers (that is, CCBank did not in Oregon subjectively make the choice to extend a loan, nor did CCBank develop automated approval processes), or (c) disburse loan proceeds.

5.      I am familiar with Section 1, Subsection 3 of Oregon HB 4116, codified at Or. Rev. Stat. § 725.015. Since HB 4116 became effective on June 5, 2026, it is my understanding that Defendant takes the position that all consumer finance loans made to an individual residing or domiciled in Oregon of $50,000 or less are subject to Oregon's 36% interest rate cap, even if such loans are made by out-of-state state banks in accordance with their home states' laws and federal law, in particular 12 U.S.C. § 1831d of the Federal Deposit Insurance Act.

6.      Prior to the effective date of HB 4116, CCBank made consumer finance loans to Oregon residents with interest rates over 36% based on federal preemption of Oregon laws and permissible rates allowed under Utah law.

7.      I understand that our competitor nationally chartered banks remain free to export the interest rates and fees of their home states under the National Bank Act, 12 U.S.C. § 85, without

2

regard to the opt out of federal preemption and the purported interest rate cap imposed by HB 4116.

8.    CCBank has determined that, as a result of the enactment of HB 4116, and its opt out under Section 525 of DIDMCA, legal and operational uncertainty has been created, and that until settled, it is no longer prudent or economical for CCBank to make consumer finance loans to residents of Oregon. As a result, the uncertainty created by HB 4116 has already resulted in immediate and unrecoverable loss of substantial revenue to CCBank. It is difficult to estimate the full extent of the anticipated lost revenues due to the enactment of HB 4116, but according to CCBank's best estimates at this time, HB 4116 will cause it to lose substantial revenue – almost one million dollars in the first year alone.

9.    It is difficult to estimate the full extent of the anticipated harm to CCBank's relationship with consumers as a result of HB 4116 should it be allowed to remain in effect. Since CCBank no longer lends into the state, CCBank (a) expects to lose clients to national banks because national banks are permitted to continue charging the same interest rates and fees allowed by their home states' laws they have always charged in Oregon; and (b) in the event the that the legislation is later repealed or invalidated expects to (i) experience significant difficulty in "winning back" lost consumers after they have established relationships with alternative credit providers, even if it is on less favorable terms, and (ii) incur otherwise unnecessary marketing expenses, in an attempt to win back such customers.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and accurate. Executed this 11th day of June 2026 at Pleasant Grove, Utah.

_____
Mike Watson

3